


**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Samuel R. Miller (SM 2511)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

**LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW**
Audrey Wiggins
 *Pro Hac Vice Motion Forthcoming*
Sarah Crawford
 *Pro Hac Vice Motion Forthcoming*
1401 New York Ave., NW, Suite 400
Washington, DC 20005
Telephone: 202-662-8600

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERTO J. ARROYO, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ACCENTURE, LLP; ACCENTURE INC.; ACCENTURE LLC; ACCENTURE LTD., <br><br> Defendants. | **CLASS ACTION COMPLAINT** |

Plaintiff, Roberto J. Arroyo, individually and as a class representative on behalf of all others similarly situated, by his attorneys Outten & Golden LLP and the Lawyers' Committee for Civil Rights Under Law, brings the following allegations against Defendants Accenture, LLP, Accenture Inc., Accenture LLC and Accenture Ltd. (collectively "Accenture"):

1

## STATEMENT OF THE CASE

1. Accenture, one of the largest management consulting firms in the world, rejects job applicants and terminates employees with criminal records, even where the criminal history of particular individuals, such as Mr. Arroyo, has no bearing on the their fitness or ability to perform the job. Because this practice perpetuates gross racial and ethnic disparities in the criminal justice system, it is unlawful under the Civil Rights Act of 1964.

## PARTIES

2. Plaintiff Roberto J. Arroyo is a Latino citizen of the United States, presently residing in Morristown, New Jersey. He has a bachelor's degree in computer science from the New Jersey Institute of Technology and has excelled in his career as an information technology professional. He served with distinction in the United States Navy during Desert Storm. Mr. Arroyo worked for Accenture as a contract employee in its Murray Hill, New Jersey office from November 2005 to April 2007. In April 2007, Accenture offered him permanent employment subject only to the results of a background check. On April 17, 2007, Accenture withdrew its job offer and terminated Mr. Arroyo's employment as a contract worker based on a prior conviction that had no bearing on his ability or fitness to continue the work he had already been performing for 17 months.

3. Upon information and belief, Defendants maintain control, oversight, and direction over the operation of the office in which Plaintiff worked, including the background screening practices therein.

4. Defendant Accenture, LLP is an Illinois limited liability partnership. At all times relevant to this complaint, Accenture LLP has engaged in business affecting commerce, has employed more than 15 employees, and has been an employer within the meaning of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").

2

5. Defendant Accenture Inc. is a Delaware corporation. At all times relevant to this complaint, Accenture Inc. has engaged in business affecting commerce, has employed more than 15 employees, and has been an employer within the meaning of Title VII.

6. Defendant Accenture LLC is a Delaware limited liability company. At all times relevant to this complaint, Accenture Inc. has engaged in business affecting commerce, has employed more than 15 employees, and has been an employer within the meaning of Title VII.

7. Defendant Accenture Ltd., incorporated in Ireland, is the parent company of Defendant Accenture LLP, Accenture Inc. and Accenture LLC. At all times relevant to this complaint, Accenture Inc. has engaged in business affecting commerce, has employed more than 15 employees, and has been an employer within the meaning of Title VII.

8. Accenture was formerly known as Arthur Anderson. Accenture does not indentify a headquarter office, instead describing itself as a global corporation. The Company does have several major "hub offices." Accenture's New York Metro Hub, which encompasses the Murray Hill office and others, is located at 1345 Avenue of the Americas in Manhattan.

## JURISDICTION AND VENUE

9. The court has jurisdiction under 28 U.S.C. § 1331 as this claim arose under the Constitution, laws, or treaties of the United States and under § 717 of Title VII, 42 U.S.C. § 2000e-16(c).

10. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because Accenture's Murray Hill, New Jersey office where Mr. Arroyo worked is part of the Company's New York Metro Hub in Manhattan. Upon information and belief, the decision not to hire Mr. Arroyo based on his conviction record and/or the policy on employee background screening that led to the decision emanates from the Company's Manhattan office.

## PROCEDURAL AND ADMINISTRATIVE REQUIREMENTS

11. Plaintiff has satisfied the procedural and administrative requirements for proceeding under Title VII. On November 26, 2007, Plaintiff filed a timely written Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). On January 8, 2010, the EEOC issued a right to sue letter to Plaintiff, which was received on January 13, 2010. Plaintiff will have commenced this action within 90 days of his receipt of the notice of right to sue.

## BACKGROUND

12. Arrest, conviction, and incarceration rates of African Americans and Latinos far exceed those of whites nationwide. According to the U.S. Department of Justice, almost 17% of adult black males and almost 8% of Latino males have been incarcerated. By contrast, only 2.6% of white males have been incarcerated. While African Americans make up approximately 13% of the population, they account for approximately 28% of arrests and 38% of felony convictions in state courts around the country. Latinos are well over two times more likely than non-Latino whites to be arrested.

13. As a result of these statistical disparities, restrictions on hiring individuals with criminal records have a far more severe effect on African Americans and Latinos than on whites. In other words, policies such as Accenture's effectively import the discrimination present in the criminal justice system into the employment sector. This discriminatory denial of employment affects not only the individuals who are rejected or terminated, but also their families and entire communities.

14. For decades, the Supreme Court and the EEOC have recognized that overly broad restrictions on hiring individuals with criminal records are discriminatory and illegal under Title VII of the Civil Rights Act. That law requires that where significant racial disparatity exists, the

use of criminal history can be considered only where the employer can prove that the particular crime at issue is related to the particular job in question, and that denial of the position is necessary for the employer to conduct its business. Likewise, the federal government's Uniform Guidelines on the Use of Employee Selection Procedures mandates that any selection procedure having an adverse racial impact on hiring or employment will be deemed discriminatory unless it has been validated as job-related and consistent with business necessity.

15. In this context, an employer must consider the nature and gravity of the offense, the time that has passed since the offense, and the nature of the job in question. The employer also must establish that there is no less discriminatory alternative to the way it uses applicants' and employees' criminal history.

16. In this case, Accenture, a major publicly traded company employing hundreds of thousands of workers has no policy to guide its use of criminal background screening to safeguard against unfair and discriminatory employment practices.

17. In addition to being unlawful, policies and practices that disqualify job applicants whose criminal history has no bearing on the their fitness or ability to perform the job are bad public policy. The ability to find employment is an essential aspect of an ex-offender's re-entry into society. Recidivism declines when ex-offenders have viable employment prospects and other stabilizing resources in their communities. Accenture's policy of discriminating against individual's with criminal records frustrates such public policy objectives. The Company is also losing good workers like Mr. Arroyo for no good reason.

## PLAINTIFF'S FACTUAL ALLEGATIONS

18. In November, 2005, Mr. Arroyo was placed by an employment agency to work for Accenture as an analyst in its technical support department in their Murray Hill, New Jersey office. Mr. Arroyo provided technical support to Accenture on a full-time basis for 17 months.

5

19. During this time, Plaintiff worked long hours and took almost no time off to the benefit of Accenture and its clients. He was a conscientious, effective, and well-liked employee. His job performance was excellent.

20. Mr. Arroyo was supervised by an Accenture employee, Rory Cupen. Mr. Cupen was so impressed with Plaintiff's excellent work performance and reliability that he advised Mr. Arroyo to apply for a permanent position as a technical support analyst. The position's duties and responsibilities were the same or substantially the same as the work he had already been doing for Defendants. In March 2007, Mr. Arroyo applied for the job, was given several interviews, and received a contingent offer of employment pending a background check. At no point during this process did Accenture ask Mr. Arroyo whether he had any criminal history.

21. The background check on Mr. Arroyo revealed that he had one criminal event on his record; a ten year old conviction stemming from a car accident in which Mr. Arroyo had been driving while intoxicated. In 1997, Mr. Arroyo made the mistake of drinking and driving. He crossed the yellow line and accidentally hit an oncoming car. The driver of that car tragically died in the collision. Mr. Arroyo was convicted of vehicular homicide, and spent two and a half years in prison. He deeply regrets the loss of life caused by his mistake, and he has succeeded in becoming a productive member of his community ever since then. He has never committed any other crime.

22. As soon as Accenture learned of Mr. Arroyo's conviction, the company withdrew its offer and terminated his contractual placement. On approximately April 17, 2007, Marsha Chisolm, a human resources representative on contract with Accenture, notified Mr. Arroyo that Accenture had rescinded its job offer because of Mr. Arroyo's criminal record. Mr. Arroyo protested that his conviction had no relation to the job duties he had been performing so well for a year and a half, but Accenture's Human Resources representative told him that the decision was

6

based on company-wide policy and was final. On approximately April 18, 2007, Mr. Arroyo attempted to access his Accenture email and remote network connection but found that he had been locked out of the system. Defendants' actions were particularly surprising since Mr. Arroyo had proven himself to be a successful worker who posed no risk to the company, and because he had disclosed his conviction to the placement agency, which also had performed a background check, prior to starting with Accenture.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings his class allegations under to Fed. R. Civ. P. 23(a), and (b)(2) on behalf of a class defined as follows: All Latino and African American persons who were denied employment or terminated based on their actual or presumed criminal background between January 30, 2007 and the date of judgment in this action (the "Class").

24. Plaintiff is a member of the Class.

25. Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable. Accenture has offices throughout the United States and employs over 180,000 people. Plaintiffs do not know the precise number of Class Members – this information is in Accenture's possession.

26. There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members. Common questions include, among others: (1) whether it is Accenture's policy or practice to reject job applicants or terminate current employees based on their criminal records; (2) what screening parameters Accenture uses to reject or terminate individuals based on their criminal records; (3) whether Accenture's policy or practice to reject or terminate individuals based on their criminal records has a disparate impact on Latino and African American applicants or employees; (4) whether Accenture's policy or practice to reject or terminate individuals based on their criminal records is job-related and

consistent with business necessity; and (5) what equitable and injunctive relief for the Class is warranted.

27. Plaintiff's claims are typical of the claims of the Class: (1) Plaintiff applied for a position at Accenture, where he had already been working for 17 months; (2) he was subjected to a background check, just as other Class members; (3) he was subjected to substantially the same screening device as other Class members; (4) the job offer was revoked after the background check revealed a criminal record; (5) Accenture terminated his contract employment; and (6) he has the same discrimination claim as other Class members based on disparate impact. All of these claims are substantially shared by each and every class member.

28. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has no conflict with any class member. Plaintiff is committed to the goal of having Accenture revise its hiring policy and practice to eliminate its discriminatory impact on African American and Latino applicants and employees.

29. Plaintiff has retained counsel competent and experienced in complex employment discrimination class actions.

30. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Accenture has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The Class members are entitled to injunctive relief to end Accenture's common, uniform, unfair, and discriminatory policies and/or practices.

## CLAIM FOR RELIEF
### (Disparate Impact)
### (Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000(e) *et seq.*)

31. Plaintiff incorporates by reference the allegations in all preceding paragraphs.

32.     Plaintiff brings this claim on his own behalf and on behalf of the Class.

33.     Defendants' policy and practice of denying employment opportunities based on applicants' criminal records harmed Plaintiff and the Class and constitutes unlawful race and/or national origin discrimination in violation of 42 U.S.C. §§ 2000 *et seq.*

34.     Defendants' policy and practice of denying employment opportunities based on applicants' and employees' criminal records has a disparate impact on Latinos and African Americans, and is neither job-related nor consistent with business necessity.  Even if Defendants' policy and practice could be justified by business necessity, less discriminatory alternatives exist that would equally serve any alleged necessity.

35.     Plaintiff and the Class have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  Plaintiff and the Class he seeks to represent are now suffering, and will continue to suffer, irreparable injury from Defendants' discriminatory acts and omissions.

36.     Defendants' conduct has caused, and continues to cause, Plaintiff and the members of the Class substantial losses in earnings and other employment benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief as follows:

1. Certification of the case as a class action on behalf of the proposed Class;
2. Designation of Representative Plaintiff Roberto Arroyo as representative on behalf of the Class;
3. Designation of Representative Plaintiff's counsel of record as Class counsel;
4. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*;

5. A preliminary and permanent injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein;

6. An order that Defendants institute and carry out policies, practices, and programs that provide equal employment opportunities for all applicants and employees regardless of criminal history status, unless such status can be justified as job-related and consistent with business necessity, where no less discriminatory alternative exists, and that Defendants eradicate the effects of its past and present unlawful employment practices;

7. An order restoring Plaintiff and Class members to their rightful positions at Accenture, as applicants or employees, or in lieu of instatement or reinstatement, an order for back and front pay (including interest) and benefits;

8. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law, including but not limited to 42 U.S.C. §§ 2000e-5(k);

9. Pre-judgment and post-judgment interest, as provided by law; and

10. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: New York, NY
April 8, 2010

                                        Respectfully submitted,

                                        By: _____

**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Samuel R. Miller (SM 2511)
Ossai Miazad (OM 1127)

3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
Audrey Wiggins
  *Pro Hac Vice Motion Forthcoming*
Sarah Crawford
  *Pro Hac Vice Motion Forthcoming*
1401 New York Ave., NW, Suite 400
Washington, DC 20005
Telephone: 202-662-8600

**Attorneys for Plaintiff and the Putative Classes**

11